# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 7, 2026

Lyle W. Cayce
Clerk

———————

No. 25-40106

———————

Yoni Orli Perdomo,

*Plaintiff—Appellant*,

*versus*

City of League City, Texas; City of League City Police
Department; Trevor Rector, *Officer*; Tanner Surrat,
*Officer*,

*Defendants—Appellees*.

———————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:24-CV-129

———————————————————

Before Jones and Engelhardt, *Circuit Judges*, and Summerhays,
*District Judge*.[*]

Edith H. Jones, *Circuit Judge*:

After Plaintiff-Appellant Yoni Perdomo repeatedly slammed his body
into Defendant-Appellee Officer Rector, Officer Trevor Rector tackled
Perdomo to the ground. Perdomo sustained serious injuries when his head

———————————————

[*] United States District Judge for the Western District of Louisiana, sitting by
designation.

hit a concrete sidewalk during the tackle. Based on video evidence depicting Perdomo as aggressive, rather than compliant, in the moments before the injury, the district court dismissed Perdomo's complaint against the Officers, concluding that the defendant Officers acted reasonably and were entitled to qualified immunity. Because we agree that the Officers acted reasonably under the alleged circumstances, we AFFIRM.

## BACKGROUND

In May 2022, Yoni Perdomo worked as a subcontractor on a residential remodeling in League City, Texas. The general contractor on the project terminated Perdomo's employment in the middle of the project. After his termination, Perdomo returned to the project site, allegedly to retrieve his tools and some unpaid wages. When the general contractor refused to tender payment to Perdomo and demanded that Perdomo stop trespassing on the property, Perdomo called the police. Officers Trevor Rector and Tanner Surrat ("the Officers"), the Defendant-Appellees, arrived at the scene shortly thereafter.

After briefly speaking with the general contractor, who requested that the Officers remove Perdomo from the property, Officer Rector approached Perdomo and offered to give Perdomo a ride away from the property. Perdomo ignored the offer. Following a brief exchange during which Officer Rector insulted Perdomo and Perdomo became increasingly frustrated, Officer Rector warned Perdomo that he would go to jail if he returned to the property. According to body camera footage of the incident, Perdomo responded by saying "Ok, go to jail," before putting his hands behind his back, turning around, and slamming his back twice into Officer Rector's chest. Perdomo's amended complaint and briefing characterize this behavior as "compliant" or "submissive."

2

After the second time Perdomo made contact with Officer Rector, Officer Rector tackled Perdomo to the ground. During the tackle, Perdomo hit his forehead on the concrete sidewalk. Perdomo began to convulse and bleed from his right ear. When the Officers observed Perdomo's condition, they called an ambulance within a few seconds and moved Perdomo from the sidewalk to a nearby patch of grass. Thirteen minutes later, an ambulance arrived and took Perdomo to the hospital. Perdomo alleges that, as a result of his injury, he suffered a stroke, contusions, and several other lasting injuries.

Perdomo filed suit in federal court against Officer Rector, Officer Surratt, the League City Police Department, and the City of League City, bringing a collection of claims under 42 U.S.C. § 1983 and state law. The district court dismissed all of Perdomo's claims under Fed. Rule Civ. Proc. 12(b)(6). The court found that the body camera footage blatantly contradicted Perdomo's account of the facts and that, based on the events depicted in the video, qualified immunity shielded the Officers from liability. Perdomo timely appealed.

## STANDARD OF REVIEW

This court reviews Rule 12(b)(6) motions to dismiss *de novo*, accepting well-pleaded factual allegations as true and drawing reasonable inferences in the light most favorable to the plaintiff. *White v. U.S. Corr., L.L.C.*, 996 F.3d 302, 306 (5th Cir. 2021). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). A reviewing court need not accept "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020)

(quoting *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010)). Courts may also reject a plaintiff's allegations if video evidence attached to the pleadings "blatantly contradict[s] those allegations." *Harmon v. City of Arlington*, 16 F.4th 1159, 1163 (5th Cir. 2021) (internal quotation marks omitted) (quoting *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007)).

## DISCUSSION

Before reviewing Perdomo's claims, this court considers whether Perdomo's factual allegations align with the video evidence. They do not. Perdomo contends that, in the moments before Officer Rector tackled him, he "briskly walked backward" and "made incidental contact" with Officer Rector while behaving in a "submissive" and "compliant" manner. This description deviates significantly from the events captured on video. As the district court observed in rejecting Perdomo's allegations, the video evidence shows a "visibly aggravated Perdomo place[] his hands behind his back unprompted, turn[], and slam[] the back of his shoulder into [Officer] Rector's chest twice, knocking [Officer] Rector backward." Perdomo's conduct in the video appears to be neither "submissive" nor "compliant," so like the district court, this court concludes that the video evidence blatantly contradicts Perdomo's complaint.[1]

Having rejected Perdomo's factual allegations in favor of the video evidence, disposing of Perdomo's claims is straightforward. Against the

_____

[1] Perdomo suggests that the video is "ambiguous" because his back obscures the video feed for five seconds after Perdomo makes contact with Officer Rector. But neither party disputes what happened during that five-second period. Both sides agree that Officer Rector bear-hugged Perdomo and tackled him to the ground. The parties only disagree about the moments leading up to the tackle, and the video is unobscured during that period.

Officers, Perdomo asserts claims for excessive force, false arrest, unreasonable seizure, deliberate indifference to medical needs, and assault. He further alleges that liability should extend to the City and the Police Department based on *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018 (1978), and the City's ratification of the Officers' conduct. Finally, Perdomo raises claims for negligence per se and malicious prosecution against the City, the Police Department, and the Officers. We review each set of claims in turn.

Perdomo's several claims against Officer Rector and Officer Surratt run headlong into qualified immunity. To overcome an officer's qualified immunity defense, a plaintiff "must allege facts showing that the officer[] (1)'violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'" *Templeton v. Jarmillo*, 28 F.4th 618, 621 (5th Cir. 2022) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S. Ct. 2074, 2080 (2011)). The plaintiff alone bears the burden of refuting qualified immunity. *See Jackson v. City of Hearne*, 959 F.3d 194, 201 (5th Cir. 2020).

Perdomo fails to successfully allege that the Officers violated his statutory or constitutional rights.[2] A plaintiff suing for excessive force must allege "(1) an injury[,] (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009) (quoting *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007)). In determining whether force was excessive, courts conduct a case-specific

---

[2] Because this court concludes that Perdomo's allegations do not demonstrate any violation of law, clearly established or otherwise, we do not reach the clearly established law prong of qualified immunity. *See Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 818 (2009).

inquiry that considers "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest." *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872 (1989). As the district court observed, Perdomo's forceful contact with Officer Rector constituted felony assault. Thus, all three of the *Graham* factors support the reasonableness of the Officers' actions. Perdomo was engaged in a felony, threatened the safety of the Officers, and was not acting in a compliant manner.[3] Moreover, the entire incident, from the moment Perdomo first pushed his shoulders into Officer Rector to the moment Perdomo became visible on the ground, lasted five seconds. The brevity of the encounter left Officer Rector with no time to pursue alternatives or gauge the risk that Perdomo posed.[4] Perdomo has not successfully alleged that the Officers used excessive force.

Nor has Perdomo adequately alleged that the Officers conducted a false arrest or unreasonable seizure. The Fourth Amendment permits arrests supported by probable cause. *See Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001). The Officers had probable cause to believe that Perdomo had committed felony assault or had unlawfully interfered with a police

---

[3] Reaching beyond the *Graham* factors, Perdomo asserts that the Officers knew that Perdomo suffered from a mental health problem and thus should have tried to deescalate the encounter. The record does not support this assertion. The complaint never alleges that the Officers were forewarned about Perdomo's mental health, and the video evidence also does not depict the Officers receiving any such warning until *after* tackling Perdomo.

[4] Because Officer Rector acted reasonably, Perdomo's claim against Officer Surratt for bystander liability fails. A plaintiff arguing bystander liability must show that an officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (quoting *Randall v. Prince George's Cnty.*, 302 F.3d 188, 204 (4th Cir. 2002)). Here, Perdomo has failed to adequately allege that Officer Rector violated his rights. Officer Surratt had no obligation to intervene to stop Officer Rector from lawfully subduing Perdomo.

officer because they witnessed Perdomo commit those offenses. Based on that probable cause, the Officers were entitled to arrest or seize Perdomo.[5]

Next, Perdomo contends that the Officers improperly denied him medical care under the Fourteenth Amendment. To properly state such a claim, Perdomo must allege facts showing that officers acted with deliberate indifference to his medical needs. *See Austin v. City of Pasadena*, 74 F.4th 312, 327–28 (5th Cir. 2023). Showing deliberate indifference entails alleging that (1) an "official was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and (2) the official actually drew that inference." *Id.* at 328 (internal quotation marks omitted) (quoting *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001)). Perdomo fails to plausibly allege that these elements were present here. The Officers called an ambulance almost immediately upon observing Perdomo's injuries, and the ambulance arrived only a few minutes later. While awaiting the ambulance, the Officers did move Perdomo a few feet, which supposedly risked aggravating Perdomo's head injury. Other than conclusory allegations that these risks were "obvious," Perdomo alleges no specific facts indicating that the Officers were aware of these risks. Because awareness is a precondition to deliberate indifference, Perdomo has not sufficiently pled that the Officers acted with deliberate indifference.

The lawfulness of the Officers' conduct also defeats Perdomo's *Monell* and ratification claims. When a municipality's or police department's official policy or custom is the moving force behind a constitutional violation, the municipality may face liability under 42 U.S.C. § 1983. *Monell*, 436 U.S.

---

[5] The same reasoning defeats Perdomo's malicious prosecution claim. A plaintiff can prevail on a malicious prosecution claim only if the prosecution was instituted without probable cause. *Armstrong v. Ashley*, 60 F.4th 262, 278 (5th Cir. 2023). That probable cause existed here makes it impossible for Perdomo to satisfy this element.

at 694–95, 98 S. Ct. at 2038. Alternatively, a city can face liability if it endorses a constitutional violation. *Young v. Bd. of Supervisors*, 927 F.3d 898, 903 (5th Cir. 2019). But a city cannot be liable for causing or endorsing a violation if no violation occurred. No violation occurred here, so the City and the Police Department are not liable under these theories.

Finally, Perdomo's state law claims for assault and negligence do not overcome the Defendant-Appellees' immunity. The Officers benefit from immunity because "[o]fficial immunity in Texas is substantially the same as qualified immunity under federal law."[6] *Hart v. O'Brien*, 127 F.3d 424, 450 (5th Cir. 1997). The Officers' objectively reasonable actions, undertaken in good faith, easily trigger official immunity here. Immunity also shields League City and the Police Department from liability. Texas governmental units do not waive immunity for claims "arising out of assault, battery, false imprisonment, or any other intentional tort." Tex. Civ. Prac. & Rem. Code § 101.057. Perdomo attempts to frame his claim as a negligence claim, but Texas state courts have held that when an excessive force claim arises from a lawful arrest, "the claim is for battery alone." *City of Watauga v. Gordon*, 434 S.W.3d 586, 593 (Tex. 2014) (explaining that excessive force claims "in the context of a lawful arrest arise out of battery," not negligence). As a result, governmental immunity applies, and the claim fails.

---

[6] State immunity substitutes a "good faith" requirement for federal immunity's "clearly established law" requirement. *Hart v. O'Brien*, 127 F.3d 424, 450 (5th Cir. 1997). Nothing in the record suggests that the Officers acted in bad faith, so state immunity applies with equal force as qualified immunity.

## CONCLUSION

Based on the events described in Perdomo's allegations and depicted in the video footage, Officer Rector's split-second decision to subdue a noncompliant Perdomo did not violate Perdomo's rights. We AFFIRM.